**HAHN & HESSEN LLP**
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
Mark T. Power, Esq.
Janine M. Figueiredo, Esq.

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------- X
                                          :
In re:                                    :       Chapter 11
                                          :
Décor Holdings, Inc., et al.,¹            :       Case No. 19-71020 (REG)
                                          :       Case No. 19-71022 (REG)
                          Debtors.        :       Case No. 19-71023 (REG)
                                          :       Case No. 19-71024 (REG)
                                          :       Case No. 19-71025 (REG)
                                          :
                                          :       Joint Administration Requested
-------------------------------------------------------------------- X
```

**APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN RAS MANAGEMENT ADVISORS, LLC TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTING OFFICER AND CERTAIN ADDITIONAL PERSONNEL *NUNC PRO TUNC* TO THE PETITION DATE**

Décor Holdings, Inc. and its affiliated debtors and debtors-in-possession (collectively,

the "Debtors"), by and through their proposed counsel, Hahn & Hessen LLP, hereby submit

this application (the "Application") pursuant to sections 105(a) and 363(b) of title 11 of the

United States Code (the "Bankruptcy Code") for entry of an order, substantially in the form

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); The Robert Allen Duralee Group, Inc. (8435); The Robert Allen Duralee Group, LLC (1798); and The Robert Allen Duralee Group Furniture, LLC (2835). The corporate headquarters and the mailing address for the Debtors listed above is 49 Wireless Boulevard, Suite 150, Hauppauge, NY 11788. The Debtors also maintain a separate corporate office at 2 Hampshire Street, Suite 300, Foxboro, MA 02035.

annexed hereto as **Exhibit C**: (a) authorizing the Debtors to retain RAS Management Advisors, LLC ("RAS"), pursuant to the terms and conditions of that certain letter agreement between RAS and the Debtors dated December 17, 2018 (the "Engagement Date") as modified and amended on January 14, 2019 (collectively, the "Engagement Letter"),[2] a copy of which is attached hereto as **Exhibit A**, to provide (i) Timothy D. Boates ("Boates") as Chief Restructuring Officer ("CRO"), and (ii) additional RAS personnel (the "Additional RAS Personnel" and, together with the CRO, the "RAS Professionals"); (b) providing that the employment of the RAS Professionals is effective *nunc pro tunc* as of the Petition Date (as defined below); and (c) granting certain related relief. In support of this Application, the Debtors submit the Declaration of Timothy D. Boates (the "Boates Declaration"), attached hereto as **Exhibit B** and incorporated herein by reference, and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Eastern District of New York (this "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested in this Application are sections 105(a) and 363(b) of the Bankruptcy Code.

---

[2] Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein. Additionally, any initially capitalized terms used in this Application and not otherwise defined herein shall have the meaning ascribed to them in the Engagement Letter.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing these cases (the "Chapter 11 Cases").

4.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      As of the date hereof, no trustee, examiner, or official committee of unsecured creditors or other official committee has been appointed in the Chapter 11 Cases.

6.      A more detailed description of the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Lee Silberman in Support of Chapter 11 Petitions and First Day Motions and Applicatio*ns filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

7.      By this Application, the Debtors seek the entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code (a) authorizing the Debtors to retain RAS pursuant to the terms and conditions set forth in the Engagement Letter to provide (i) Timothy D. Boates as CRO, and (ii) the Additional RAS Personnel; (b) providing that the employment of the RAS Professionals is effective *nunc pro tunc* as of the Petition Date; and (c) granting certain related relief.

## QUALIFICATIONS OF RAS AND MR. BOATES

8.      The Debtors are familiar with the professional standing and reputation of RAS.  The Debtors posit that RAS and the RAS Professionals are well-qualified to act on behalf of the Debtors given their extensive knowledge and expertise in the areas of bankruptcy, financial and business management matters relevant to the Chapter 11 Cases.

RAS is a crisis management and turnaround firm of independent professional consultants with specialties in areas ranging from finance to manufacturing, distribution, marketing and general management.  RAS' practice is national in scope and has entailed assignments with companies ranging from $10 million to $1 billion in sales.   RAS has also handled international assignments in Europe, Asia, Mexico and South America.    The RAS Professionals are seasoned professionals with significant experience in the field of restructuring and providing financial and operational guidance to companies in distressed situations.   RAS has provided such services to debtors in numerous chapter 11 cases. *See, e.g.*, *In re Limited Stores Co., LLC*, Case No. 17-10134 (KJC) (Bankr. D. Del. 2017); *Horsehead Holding Corp.*, Case No. 16-10287 (CSS) (Bankr. D. Del. 2016); *In re OCZ Tech. Grp., Inc.*, Case No. 13-13126 (MFW) (Bankr. D. Del. 2014); *In re Trailer Bridge, Inc.*, Case No. 11-08348 (JAF) (Bankr. M.D. Fla. 2011); *In re Crucible Materials Corp.*, Case No. 09-11582 (MFW) (Bankr. D. Del. 2009); *In re Drug Fair Grp., Inc.*, Case No. 09-10897 (BLS) (Bankr. D. Del. 2009); *In re Powermate Holding Corp.*, Case No. 08-10498 (KG) (Bankr. D. Del. 2008); *In re Arthur D. Little, Inc.*, Case No. 02-41045 (HB) (Bankr. D. Ma. 2002); *In re TEU Holdings, Inc.*, Case No. 00-01098 (RJN) (Bankr. D. Del. 2000); *In re Fulcrum Direct, Inc.*, Case No. 98-01767 (MFW) (Bankr D. Del. 1998); *In re The WIZ, Inc.*, Case No. 97-48257 (CB) (Bankr. S.D.N.Y. 1997).

9.    Prior to joining RAS, Boates spent eight (8) years working as a CPA in a major international firm accounting firm, where he was heavily involved in advising on acquisitions and in deal negotiations.   Subsequent to his public accounting position, he served as a CEO and CFO of companies in distribution and manufacturing services.   Since joining RAS, Boates has acted as chief restructuring officer, interim chief financial officer

and/or restructuring advisor in many industries both in and outside of chapter 11. Boates is eminently qualified to assist the Debtors' in developing strategic alternatives for their financial restructuring process.

10.     Moreover, in addition to the RAS Professionals' general experience in the management of troubled companies, both in and out of court, the RAS Professionals are familiar with the Debtors' business, financial affairs and capital structure. Since the Engagement Date, the RAS Professionals have worked closely with the Debtors' management, accountants, and counsel and become well acquainted with the Debtors' operations, debt structure, creditors, business and related matters. As such, the RAS Professionals have relevant knowledge regarding the Debtors that will assist them in providing effective and efficient services in the Chapter 11 Cases.

11.     Accordingly, the Debtors submit that the retention of RAS on the terms and conditions set forth in the Engagement Letter is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties-in-interest, and should be granted in all respects.

**SCOPE OF SERVICES**

12.     Pursuant to the Engagement Letter, the CRO will oversee all aspects of the Debtors' operations. Among other things, the CRO, with the assistance of the Additional RAS Personnel, has provided, or will provide on a prospective basis upon the Court's approval of this Application, professional services ("Services") such as:

- Directing the management of all aspects of the Company's operations, including all initiatives related to the Company's cost structure, financial operations, and its employees;

- Evaluating the Company's cash and liquidity requirements, including the development/review of cash flow projections, revenue projections, and all other financial and accounting information;

- Directing the efforts of the Company's management, its employees, and all of its external professionals in connection with the Company's day-to-day operations and any sale or restructuring initiatives;

- Directing negotiations with the Company's significant creditors, including without limitation, the Company's secured lenders and its trade creditors;

- Directing all cash management matters;

- Assisting in the development and implementation of a plan of reorganization, if appropriate;

- Communicating directly with, and providing information to and as reasonably requested by, the Company's secured lenders; and

- Providing such other services as are customarily provided in connection with the analysis and negotiation of a sale or restructuring initiative.

13.    Subject to this Court's approval, RAS is willing to provide the Services to the Debtors.  Under the terms of the Engagement Letter, the CRO will report directly to the Debtors' board of directors.    RAS will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## COMPENSATION AND EXPENSES

14.    Subject to this Court's approval, the Debtors propose to pay the RAS for the Services of the RAS Professionals assigned to this matter in accordance with the terms of the Engagement Letter (the "Fee Structure").

15.    The Engagement Letter provides that RAS will be compensated for providing the services of (a) Mr. Boates at the rate of $6,000 per day ($600 per hour), and (b) Messrs. Puopolo and Tetreault at the rate of $3,500 per day ($350 per hour).  Daily rates are charged for work performed away from RAS' offices for no less than ten (10) hours.  Hours in excess of ten (10) hours per day, and hours working at RAS' offices, are charged at the applicable

hourly rate; provided, however, that in no event will the daily billings for each RAS Professional exceed their respective daily rate.  Travel time will be billed at fifty percent (50%) of the applicable hourly rate.

16.    By this Application, RAS seeks to be relieved from any obligation to maintain time records in connection with the Services rendered in one-tenth (0.10) of an hour increments to permit RAS to record its time entries in one-half (0.50) hour increments.

17.    In addition to compensation for professional services rendered by the RAS Professionals, RAS will seek reimbursement for actual, reasonable and necessary expenses, including travel, lodging, photocopying, and other expenses incurred in providing the RAS Professionals' services.

18.    The Fee Structure is consistent with, and typical of, compensation agreements entered into by RAS and other comparable firms in connection with the rendering of similar services under similar circumstances.  Moreover, given the numerous issues with RAS may be required to address in the performance of its services, RAS' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the Fee Structure in the Engagement Letter is fair and reasonable under these circumstances.

## INDEMNIFICATION

19.    Subject to the approval of the Court, and as a material part of the consideration for which RAS has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions").  The Indemnification Provisions provide that the

Debtors shall indemnify and hold harmless RAS and its employees, directors, officers and agents, jointly and severally, from any and all claims arising from the performance of their duties described in the Engagement Letter (as may be modified from time to time in the future), other than claims arising from bad faith, gross negligence, breach of obligations under the Engagement Letter, or intentional misconduct as determined by a court of competent jurisdiction.

20.    The Indemnification Provisions are customary and reasonable for firms providing services similar to the Services and the product of arm's-length and good faith negotiations between the Debtors and RAS.  The Indemnification Provisions, viewed in conjunction with the other terms of RAS' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require the Services provided by RAS to successfully navigate the Chapter 11 Cases.  Accordingly, as part of the Application, the Debtors request that this Court approve the Indemnification Provisions as set forth in the Engagement Letter.

## <u>REPORTING AND ALLOWANCE OF FEES AND EXPENSES</u>

21.    The Engagement Agreement requires the Debtors to pay RAS the compensation described above based on the submission of weekly invoices by RAS to the Debtors.  If the Court approves the relief requested herein, RAS and the RAS Professionals will be employed under section 363 of the Bankruptcy Code, rather than as professionals under section 327 of the Bankruptcy Code.  Accordingly, RAS and the RAS Professionals will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

22.     However, to maintain transparency and to comply with the United States Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (*i.e.*, the Jay Alix Protocol), RAS will file with the Court and serve on the Debtors, the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee") and any statutory committee appointed in the Chapter 11 Cases (collectively, the "Notice Parties") a report on staffing (the "Staffing Report") by the 30th of each month for the previous month, which report would include the names and functions filled by all RAS Professionals assigned to this engagement. Such notice will provide a time period for objections to such Staffing Report. All compensation and staffing will be subject to review by the Court in the event an objection is filed to a Staffing Report.

23.     In addition, RAS will file with the Court and serve on the Notice Parties reports of compensation earned and expenses incurred on a quarterly basis (the "Compensation Reports"), which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports will summarize the services provided, identify the compensation earned by each RAS Professional, itemize expenses incurred and provide for an objection period of twenty-one (21) days from the filing and service of the Compensation Report. All such compensation would be subject to review by this Court if an objection is filed.

## PAYMENTS PRIOR TO THE PETITION DATE

24.     Prior to the Petition Date, RAS received a retainer in the total amount of $250,000 (the "Retainer"). All of RAS' prepetition invoices totaling $352,474 have been paid in full, and, pursuant to the Engagement Letter, RAS will continue to hold the

Retainer through the end of its engagement and apply the Retainer to its final invoice.  Any remaining balance in the Retainer will be returned to the Debtors.

25.    Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and RAS or the RAS Professionals for compensation to be paid in the Chapter 11 Cases.

26.    RAS is not a creditor of the Debtors' estates, and has been fully paid by the Debtors for all prepetition services rendered by RAS to the Debtors.

## DISINTERESTEDNESS

27.    The Debtors do not believe that either RAS or the RAS Professionals are "professionals" whose retention is subject to approval under section 327 of the Bankruptcy Code.  However, RAS has provided information with respect to its connections with the Debtors and other significant parties-in-interest, as more specifically described in the Boates Declaration.  To the best of its knowledge and except to the extent disclosed in the Boates Declaration, neither RAS nor any employee of RAS holds or represents an interest adverse to the Debtors' estates or has any connection to the Debtors, their creditors or other parties-in-interest in the Chapter 11 Cases.  Based upon the Boates Declaration, the Debtors submit that RAS is a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code.

28.    In addition, as set forth in the Boates Declaration, RAS will use reasonable efforts to promptly file a supplemental declaration with the Court if it discovers any new relevant facts or relationships bearing on the matters described herein during the period of RAS' retention.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

29.     The CRO will direct the day-to-day efforts of the Debtors' management and its employees, the Additional RAS Personnel, and the Debtors' other retained professionals so as to avoid any duplication of services.  The Debtors believe that the Services to be provided by RAS will complement and will not be duplicative of any services of the Debtors' other professionals, including any services provided by the Debtors' proposed investment banker, SSG Advisors, LLC.

## LEGAL BASIS FOR RELIEF REQUESTED

30.     Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b)(1).  Further, pursuant to Section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Adelphia Commc'n Corp. v. The Am. Channel (In re Adelphia Commc'n Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.")

31.     "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2 1063, 1070 (2d. Cir. 1983).

32.     Here, the decision to employ RAS should be authorized because it is based on the Debtors' sound exercise of business judgment.  Entry into the Engagement Letter and retaining RAS to provide the RAS Professionals upon the terms set forth in the Engagement Letter, this Application and any order approving this Application, would enable the Debtors to most efficiently administer the Chapter 11 Cases, address issues arising in chapter 11, and preserve and maximize the value of the estates.  The Debtors require the assistance of qualified and experienced personnel to assist in these matters.  Thus, the Debtors believe that it would be in their best interest and in the best interests of their estates, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective *nunc pro tunc* as of the Petition Date.

33.     The retention of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re Dowling College*, Case No. 16-75545 (REG) (Bankr. E.D.N.Y. Dec. 6, 2016) (order authorizing debtors' retention of chief restructuring officer and additional personnel); *In re Interfaith Med. Ctr., Inc.*, Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Mar. 27, 2014) (same); *In re ConnectEdu, Inc.*, Case No. 14-11238 (SCC) (Bankr. S.D.N.Y. June 16, 2014) (same); *In re Archbrook Laguna Holdings LLC*, Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention of chief restructuring officer pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to Section 363 of the Bankruptcy Code); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and

chief financial officer pursuant to Section 363 of the Bankruptcy Code); *In re Endeavor Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (same); *In re Devonshire PGA Holdings, LLC*, Case No. 13-12460 (CSS) (Bankr. D. Del. Oct. 16, 2013) (same); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel).

### THE PROPOSED RETENTION COMPORTS WITH THE BANKRUPTCY CODE AND THE JAY ALIX PROTOCOL[3]

34.    RAS will provide the Notice Parties with the Staffing Reports and the Compensation Reports.  Because the Debtors are seeking to retain RAS pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, RSA is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code.  Therefore, the Debtors request that fees and expenses of RAS incurred in the performance of the Services be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business, without the need for RAS to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

35.    In addition, because the Debtors are not seeking to retain RAS as a professional under section 327 of the Bankruptcy Code, there is no requirement that RAS or the RAS Professionals be disinterested.  In addition, to the best of the Debtors'

---

[3] The "Jay Alix Protocol" derives from a settlement between the United States Trustee and Jay Alix and Associates, approved on October 4, 2001 by the United States Bankruptcy Court for the District of Delaware in the case of *In re Safety-Kleen Corp.*, Case No. 00-02303, which has been followed by the Office of the United States Trustee and the United States Bankruptcy Courts for the Eastern and Southern Districts of New York.

knowledge, information and belief except as is discussed in the Boates Declaration, RAS does not have or represent any interest adverse to the Debtors' estates or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason. Information about RAS' connections to parties in interest in these cases, if any, is described in the Boates Declaration.

## NO PRIOR REQUEST

36.     No prior application for the relief sought herein has been made to this or any other Court.

## NOTICE

37.     Notice of this Application shall be provided to: (a) the Office of the United States Trustee for the Eastern District of New York; (b) The United States Attorney for the Eastern District of New York; (c) the Debtors' consolidated top thirty (30) largest unsecured creditors; (d) Counsel to Wells Fargo Bank, N.A. and PNC Bank, N.A.; (e) the Internal Revenue Service; and (f) all other parties required to receive service under Rules 2002-2 of the *Local Bankruptcy Rules for the Eastern District of New York* and the *Guidelines for First Day Motions* adopted by the Board of Judges for the United States Bankruptcy Court for the Eastern District of New York.  Due to the urgency of the circumstances surrounding this Application and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Application is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, (a) granting the relief sought herein and (b) granting such other and further relief as the Court may deem proper.

Dated: February 12, 2019
       New York, New York

Respectfully submitted,

HAHN & HESSEN LLP

*/s/ Mark T. Power*
Mark T. Power, Esq.
Janine M. Figueiredo, Esq.

488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
E-mail: mpower@hahnhessen.com
       jfigueiredo@hahnhessen.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT A**

**(Engagement Letter**)



January 14, 2019

Mr. Steve Brownlie
Chairman of the Board of Directors
The Robert Allen Duralee Group, Inc.
Décor Holdings LLC
Décor Intermediate Holdings LLC
The Robert Allen Duralee Group, LLC
The Robert Allen Duralee Group Furniture, LLC
Techstyle Contract Fabrics LLC
B. Berger Company LLC
Gaetano Fabrics LLC
49 Wireless Boulevard, Suite 150
Hauppauge, NY  11788


Dear Mr. Brownlie:

This letter is to confirm the amended and restated terms of the engagement of RAS Management Advisors, LLC ("RAS") by The Robert Allen Duralee Group, Inc., and all of its domestic US subsidiaries and affiliates as delineated in the address of this letter (collectively, the "RAD Group" or the "Company"), as originally documented in our engagement letter dated December 17, 2018, and related to the tasks outlined below (the "Assignment").

## ASSIGNMENT

Timothy Boates of RAS is being engaged as Chief Restructuring Officer ("CRO") of RAD Group to assist the Company in dealing with its financial restructuring process, and other representatives from RAS will provide support to the Company.  As CRO, Mr. Boates will direct all aspects of the RAS engagement, including the direct oversight of all other RAS staff engaged as part of this Assignment.

The CRO will direct the day-to-day efforts of the Company's management and its employees, any additional RAS representatives that may be assigned by RAS to work with the Company, and all of the Company's external legal and financial professionals.  This will include, but not be limited to (i) directing the management of all aspects of the Company's operations, including all initiatives related to the Company's cost structure, financial operations, and its employees, (ii) evaluating the Company's cash and liquidity requirements, including the development / review of cash flow projections, revenue projections, preparation of 13-week cash flow forecasts and debtor in possession funding analyses, and all other financial and accounting information related to the Company's continuing operations and any potential sale or other restructuring initiatives that the Company may elect to pursue, (iii) directing the efforts of the Company's management, its employees, and all of its external professionals in connection with the Company's day-to-day operations and any sale or restructuring initiatives, including the negotiation

of any agreements with liquidators, potential investors or funding sources, whether or not such investment or funding may be related to any potential restructuring initiative, (iv) directing negotiations with the Company's significant creditors, including without limitation, the Company's secured lenders and its trade creditors, as well as any lenders with respect to any potential financing that the Company may or may not pursue with respect to any restructuring initiative, (v) directing all cash management matters throughout the pendency of the engagement contemplated by this agreement, including any restructuring initiatives, either as part of a Chapter 11 process or otherwise, (vi) assisting in the development and implementation of a plan of reorganization, if appropriate, and (vii) communicating directly with, and providing information to and as reasonably requested by the Company's secured lenders, and (viii) providing such other services as are customarily provided in connection with the analysis and negotiation of a sale or restructuring initiative, as requested by the Board of Directors of the Company (the "Board") and mutually agreed.

The CRO will have full responsibility for all of the Company's operations, including, but not limited to day-to-day management of all aspects of the Company and its management and employees.  The CRO will report directly to, and shall serve at the pleasure of, the Board, and any RAS representatives and all Company management will report to Mr. Boates.

Notwithstanding the foregoing, the CRO shall consult with the Company's CEO and CFO prior to (i) taking in actions with respect to the termination, reduction in force or layoff of employees or the shutdown or closure of any of the Company's divisions or lines of business, (ii) communicating directly with the Company's customers or (iii) making any recommendation to the Board of Directors with respect to the sale or liquidation of substantially all of the Company's assets. Nothing contained herein shall prohibit or prevent the Company's CEO or CFO from communicating directly with potential acquirers of the Company or its assets, provided, however, that the Company's CEO and CFO first consult with the CRO prior to any such communications with potential acquirers of the Company or its assets.

## CONFIDENTIALITY

You have instructed RAS Management Advisors, LLC, and our firm agrees, that this engagement and all information obtained by it or its representatives concerning the business and operations of the Company and its affiliates is confidential and will be held in the strictest of confidence except that we may respond to any inquiries directed to us by the Company's secured lenders.  It is our policy to destroy all documents related to this engagement one year following the date of our last invoice.

## INDEMNIFICATION

The Company agrees to indemnify and hold harmless, RAS Management Advisors, LLC, its employees, directors, officers, and agents, jointly and severally, from any and all claims whatsoever that may be made against any or all of them, arising from the performance of their duties described in this letter and as modified from time to time in the future, in each case other than on account of claims arising from bad faith, gross negligence, breach of its obligations hereunder, or intentional misconduct as determined by a court of competent jurisdiction.   Claims, as used in this agreement, shall include, without limitation, all reasonable attorney's fees and reasonable legal expenses incurred by RAS Management Advisors, LLC, unless any such claim is determined by a court of competent jurisdiction, to have resulted from the gross negligence of RAS Management Advisors, LLC, its employees, officers, directors or agents. Further, the Company will take steps to

confirm that Mr. Boates and RAS are included as covered parties under all relevant active insurance policies carried by the Company.

**FEES**

We have received, and continue to hold, a retainer in the amount of $100,000 (the "Retainer"). In the event the Company proceeds with plans to commence any bankruptcy process under Chapter 11 of the US Bankruptcy Code, it is agreed that we will be paid all outstanding fees and out-of-pocket expenses incurred up to the time of any such filing, and the Retainer will be increased to the amount of $250,000 (the "Pre-petition Retainer"), and we will continue to hold the Pre-petition Retainer through the pendency of any Chapter 11 process.

We will invoice our fees and out-of-pocket expenses on a weekly basis, and those invoices will be due and payable via wire transfer upon issuance (wire transfer instructions will be provided under separate cover), subject only to any fee payment restrictions that may arise as part of any Chapter 11 bankruptcy filing. The Board is free to terminate our services as CRO at any time. Upon any such termination, we will invoice for any unpaid / unbilled time and expenses that may be in excess of the applicable Retainer or Pre-Petition Retainer balance, and such final invoice will be immediately payable by the Company. Any applicable Retainer or Pre-petition Retainer balance remaining after the offset of our final invoice will be returned to the Company within 3 business days.

Given the nature of the services to be provided, and subject only to any agreed upon time reporting requirements arising as part of any Chapter 11 process, we will record our time in half-hour increments for each RAS representative who provides services to the Company as part of this Assignment, as it is not practical or cost effective to detail our invoices in any other manner. We will include a daily time log for each RAS representative as part of our weekly billings related to this assignment. We will supply copies of our weekly invoices to the Company's Board and any other parties designated by the Company's Board or who may otherwise require notice as part of any Chapter 11 bankruptcy filing. A representative sample of our rates through December 31, 2019, is as follows:

|  | **Daily** | **Hourly** |
|---|---|---|
| Timothy Boates | $6,000 | $600 |
| Timothy Puopolo | $3,500 | $350 |
| Robert Tetreault | $3,500 | $350 |

It is anticipated that Mr. Boates, Mr. Puopolo, and Mr. Tetreault will be the primary RAS representative to provide services to the Company as part of this Assignment, but we reserve the right to substitute other comparable personnel at our discretion, at no greater than the noted rates. Further, we will consult with the Board in advance of any decision to add any additional RAS personnel to this Assignment.

Daily rates are charged for work performed away from our offices for no less than 10 hours. Hours in excess of 10 hours per day, and hours spent working at our own offices, are charged at the applicable hourly rates. Travel is charged at no greater than 50% of the applicable hourly rate. However, for purposes of this Assignment we will limit our daily billings for each RAS representative to no more than the respective daily rate for each RAS representative that may provide services under this Assignment.

Out of pocket expenses will be billed in addition to the above fees and may include coach class airfares, hotel, meals, mileage, parking, car rentals, photocopying and other incidentals as well as any attorney fees incurred (none are expected) related to this Assignment.

Please indicate your agreement with the contents of this letter by signing and returning the enclosed copy of this letter. Thank you for selecting us for this Assignment.

3

Very truly yours,
RAS Management Advisors, LLC

Timothy D. Boates
President

**<u>Agreed</u>:**

The Robert Allen Duralee Group, Inc.

_____
Name: _____
Title: _____
Date: _____



December 17, 2018

Mr. Lee Silberman
Chief Executive Officer
The Robert Allen Duralee Group, Inc.
49 Wireless Boulevard, Suite 150
Hauppauge, NY 11788

Dear Mr. Silberman:

This letter is to confirm the terms of the engagement of RAS Management Advisors, LLC ("RAS") by The Robert Allen Duralee Group, Inc. ("TRAD" or the "Company"), to perform the tasks outlined below (the "Assignment").

## ASSIGNMENT

RAS is being engaged as the Company's financial advisors. It is anticipated that our role will include the following responsibilities; (i) assisting management in directing all aspects of the Company's financial resources, including cash management and the evaluation of the Company's cash and liquidity requirements, and the oversight / review of its cash flow and related financial projections, (ii) an evaluation of all elements of the Company's commercial and administrative operations and financial performance so as to identify opportunities to immediately reduce expenses and improve liquidity, (iii) assisting the Company's management, its employees, and its external professionals in connection with any potential transactional efforts, including any refinancing of the Company's senior secured credit obligations or the potential sale of the Company's operations and assets, and (iv) directing the management of the obligations owed by the Company to its significant creditors, including without limitation, the Company's secured lenders and its trade creditors. The preceding responsibilities are subject to amendment as the result of any modifications required by the Company, as may be reasonably acceptable to RAS.

Timothy D. Boates of RAS will direct all RAS efforts related to this Assignment, including the direction of any RAS personnel proving services as part of this Assignment. Mr. Boates will report directly to the Company's CEO and Board of Directors. We are prepared to commence this Assignment upon receipt of a signed copy of this engagement letter and the retainer payment discussed below.

## CONFIDENTIALITY

You have instructed RAS Management Advisors, LLC, and our firm agrees, that this engagement and all information obtained by it or its representatives concerning the business and operations of the Company is confidential and will be held in the strictest of confidence except that we may respond to any inquiries directed to us by the Company's secured lenders. It is our policy to destroy all documents related to this engagement one year following the date of our last invoice issued with respect to this Assignment.

## INDEMNIFICATION

The Company agrees to indemnify and hold harmless, RAS Management Advisors, LLC, its employees, directors, officers, and agents, jointly and severally, from any and all claims whatsoever that may be made against any or all of them, arising from the performance of their duties described in this letter and as modified from time to time in the future. Claims, as used in this agreement, shall include, without limitation, all reasonable attorney's fees and reasonable legal expenses incurred by RAS Management Advisors, LLC, unless any such claim is determined by a court of competent jurisdiction, to have resulted from the gross negligence of RAS Management Advisors, LLC, its employees, officers, directors or agents.

## FEES

We require a retainer in the amount of $100,000 (the "Retainer"), and wire transfer instructions will be provided under separate cover. Any modification to the responsibilities included in this Assignment may necessitate a corresponding change in the amount of the Retainer. We will invoice our fees and out-of-pocket expenses on a weekly basis, and those invoices will be due and payable via wire transfer upon issuance. The Company is free to terminate our services at any time, subject only to any notice provisions that may exist between the Company and any of its constituents. Upon any such termination, we will invoice for any unpaid / unbilled time and expenses that may be in excess of the Retainer balance, and such final invoice will be immediately payable by the Company. Any Retainer balance remaining after the offset of our final invoice against the Retainer will be returned to the Company within 3 business days.

Given the nature of the services to be provided, we will record our time in half-hour increments for each RAS representative who provides services to the Company as part of this Assignment, as it is not practical or cost effective to detail our invoices in any other manner. We will include a daily time log for each RAS representative as part of our weekly billings related to this assignment. We will supply copies of our weekly invoices to the Company's CEO and any other Company personnel so designated by the Company's CEO. A representative sample of our rates through December 31, 2019, is as follows:

|                   | Daily   | Hourly |
|-------------------|---------|--------|
| Timothy Boates    | $6,000  | $600   |
| Michael Rizzo     | $4,000  | $400   |
| Robert Tetreault  | $3,500  | $350   |

It is anticipated that Mr. Tetreault, under the supervision of Mr. Boates, will be the primary RAS representative to provide services to the Company as part of this Assignment. Additional staffing requirements will be evaluated as part of our initial efforts, and Mr. Boates will seek the approval of the Company's CEO prior to adding any additional RAS personnel to this Assignment. We reserve the right to substitute other comparable personnel at our discretion, and after consultation with the Company's CEO, at no greater than the indicated rates.

Daily rates are charged for work performed away from our offices for no less than 10 hours. Hours in excess of 10 hours per day, and hours spent working at our own offices, are charged at the applicable hourly rates. Travel is charged at no greater than 50% of the applicable hourly rate. However, for purposes of the Assignment contemplated in this agreement, we will limit our daily billings for each RAS representative to no more than the respective daily rate for each RAS representative that may provide services under this Assignment.

Out of pocket expenses will be billed in addition to the above fees and may include coach class airfares, hotel, meals, mileage, parking, car rentals, photocopying and other incidentals as well as any attorney fees incurred (none are expected) related to this Assignment.

Please indicate your agreement with the contents of this letter by signing and returning the enclosed copy of this letter. Thank you for selecting us for this Assignment.

Very truly yours,
RAS Management Advisors, LLC

Timothy D. Boates
President

**Agreed**:

The Robert Allen Duralee Group, Inc.

Name:  _LOU SILBERMAN_
Title:  _CEO_
Date:  _12-17-18_

## EXHIBIT B

**(Boates Declaration)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X
                                               :

In re:                                     :       Chapter 11

                                        :

Décor Holdings, Inc., *et al.*,[1]           :       Case No. 19-71020 (REG)

                                        :       Case No. 19-71022 (REG)

                    Debtors.           :       Case No. 19-71023 (REG)

                                        :       Case No. 19-71024 (REG)

                                        :       Case No. 19-71025 (REG)

                                        :

                                        :       Joint Administration Requested

---------------------------------------------------------------------- X

### DECLARATION OF TIMOTHY D. BOATES IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN RAS MANAGEMENT ADVISORS, LLC TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTING OFFICER AND CERTAIN ADDITIONAL PERSONNEL *NUNC PRO TUNC* TO THE PETITION DATE

I, Timothy D. Boates, under penalty of perjury, declare as follows:

1.      I am President of RAS Management Advisors, LLC ("RAS").   Except as otherwise noted, the matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.      I submit this Declaration on behalf of RAS in support of the *Application for an Order Authorizing the Debtors to Employ and RAS Management Advisors, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel Nunc Pro Tunc to the Petition*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); The Robert Allen Duralee Group, Inc. (8435); The Robert Allen Duralee Group, LLC (1798); and The Robert Allen Duralee Group Furniture, LLC (2835).  The corporate headquarters and the mailing address for the Debtors listed above is 49 Wireless Boulevard, Suite 150, Hauppauge, NY 11788.  The Debtors also maintain a separate corporate office at 2 Hampshire Street, Suite 300, Foxboro, MA 02035.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at RAS and are based on information provided by such professionals.

*Date* (the "<u>Application</u>"),[3] which was filed by the above-referenced debtors and debtors in possession (collectively, the "<u>Debtors</u>").

## <u>QUALIFICATIONS</u>

3.    RAS possesses extensive knowledge and expertise in the areas of bankruptcy, financial and business management matters relevant to the Chapter 11 Cases.  RAS is a crisis management and turnaround firm of independent professional consultants with specialties in areas ranging from finance to manufacturing, distribution, marketing and general management.  RAS' practice is national in scope and has entailed assignments with companies ranging from $10 million to $1 billion in sales.  RAS has also handled international assignments in Europe, Asia, Mexico and South America.   The RAS Professionals are seasoned professionals with significant experience in the field of restructuring and providing financial and operational guidance to companies in distressed situations.  RAS has provided such services to debtors in numerous chapter 11 cases. *See*, *e.g.*, *In re Limited Stores Co., LLC*, Case No. 17-10134 (KJC) (Bankr. D. Del. 2017); *In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS) (Bankr. D. Del. 2016); *In re OCZ Tech. Grp., Inc.*, Case No. 13-13126 (MFW) (Bankr. D. Del. 2014); *In re Trailer Bridge, Inc.*, Case No. 11-08348 (JAF) (Bankr. M.D. Fla. 2011); *In re Crucible Materials Corp.*, Case No. 09-11582 (MFW) (Bankr. D. Del. 2009); *In re Drug Fair Grp., Inc.*, Case No. 09-10897 (BLS) (Bankr. D. Del. 2009); *In re Powermate Holding Corp.*, Case No. 08-10498 (KG) (Bankr. D. Del. 2008); *In re Arthur D. Little, Inc.*, Case No. 02-41045 (HB) (Bankr. D. Ma. 2002); *In re TEU Holdings, Inc.*, Case No. 00-01098 (RJN) (Bankr. D. Del. 2000); *In re Fulcrum Direct,*

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to those terms in the Application.

*Inc.*, Case No. 98-01767 (MFW) (Bankr D. Del. 1998); *In re The WIZ, Inc.*, Case No. 97-48257 (CB) (Bankr. S.D.N.Y. 1997).

4.      Prior to joining RAS, I spent eight (8) years working as a CPA in a major international firm accounting firm, where I was heavily involved in advising on acquisitions and in deal negotiations.  Subsequent to my public accounting position, I served as a CEO and CFO of companies in distribution and manufacturing services.  Since joining RAS, I have acted as chief restructuring officer, interim chief financial officer and/or restructuring advisor in many industries both in and outside of chapter 11.  As such, I am well equipped to assist the Debtors' in developing strategic alternatives for their financial restructuring process.

5.      In addition to RAS' general experience in the management of troubled companies, both in and out of court, RAS is familiar with the Debtors' business, financial affairs and capital structure.  Since the Engagement Date, RAS has worked closely with the Debtors' management, accountants, and counsel and become well acquainted with the Debtors' operations, debt structure, creditors, business and related matters. As such, RAS has relevant knowledge regarding the Debtors that will assist RAS in providing effective and efficient services in the Chapter 11 Cases.

## SCOPE OF SERVICES

6.      Pursuant to the Engagement Letter, I will oversee all aspects of the Debtors' operations.  Among other things, I, with the assistance of the Additional RAS Personnel, have provided, or will provide on a prospective basis upon the Court's approval of this Application, professional services ("Services") such as:

- Directing the management of all aspects of the Company's operations, including all initiatives related to the Company's cost structure, financial operations, and its employees;

- Evaluating the Company's cash and liquidity requirements, including the development/review of cash flow projections, revenue projections, and all other financial and accounting information;

- Directing the efforts of the Company's management, its employees, and all of its external professionals in connection with the Company's day-to-day operations and any sale or restructuring initiatives;

- Directing negotiations with the Company's significant creditors, including without limitation, the Company's secured lenders and its trade creditors;

- Directing all cash management matters;

- Assisting in the development and implementation of a plan of reorganization, if appropriate;

- Communicating directly with, and providing information to and as reasonably requested by, the Company's secured lenders; and

- Providing such other services as are customarily provided in connection with the analysis and negotiation of a sale or restructuring initiative.

7.     Subject to this Court's approval, the Additional RAS Professionals and I will provide the Services to the Debtors.  Under the terms of the Engagement Letter, I will report directly to the Debtors' board of directors.  RAS will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## COMPENSATION AND EXPENSES

8.     The Engagement Letter provides that RAS will be compensated for providing the services of (a) myself at the rate of $6,000 per day ($600 per hour), and (b) Messrs. Puopolo and Tetreault at the rate of $3,500 per day ($350 per hour).  Daily rates are charged for work performed away from RAS' offices for no less than ten (10) hours.  Hours in excess of ten (10) hours per day, and hours working at RAS' offices, are charged at the applicable hourly rate; provided, however, that in no event will the daily billings for each RAS

Professional exceed their respective daily rate.  Travel time will be billed at fifty percent (50%) of the applicable hourly rate.

9.      By the Application, RAS seeks to be relieved from any obligation to maintain time records in connection with the Services rendered in one-tenth (0.10) of an hour increments to permit RAS to record its time entries in one-half (0.50) hour increments.

10.     In addition to compensation for professional services rendered by the RAS, RAS will seek reimbursement for actual, reasonable and necessary expenses, including travel, lodging, photocopying, and other expenses incurred in providing the RAS Professionals' services.

11.     The Fee Structure is consistent with, and typical of, compensation agreements entered into by RAS and other comparable firms in connection with the rendering of similar services under similar circumstances.   Given the numerous issues with RAS may be required to address in the performance of its services, RAS' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Fee Structure in the Engagement Letter is fair and reasonable under the circumstances.

## **INDEMNIFICATION**

12.     The Indemnification Provisions are a material part of the consideration for which RAS has agreed to provide the Services.  Subject to Court approval, the Debtors have agreed to indemnify and hold harmless RAS and its employees, directors, officers and agents, jointly and severally, from any and all claims arising from the performance of their duties described in the Engagement Letter (as may be modified from time to time in the

future), other than claims arising from bad faith, gross negligence, breach of obligations under the Engagement Letter, or intentional misconduct as determined by a court of competent jurisdiction.

13.    The Indemnification Provisions are customary and reasonable for firms providing services similar to the Services and the product of arm's-length and good faith negotiations between the Debtors and RAS.  The Indemnification Provisions, viewed in conjunction with the other terms of RAS' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require the Services provided by RAS to successfully navigate the Chapter 11 Cases.

<u>**REPORTING AND ALLOWANCE OF FEES AND EXPENSES**</u>

14.    The Engagement Agreement requires the Debtors to pay RAS the compensation described above based on the submission of weekly invoices by RAS to the Debtors.  If the Court approves the relief requested herein, RAS and the RAS Professionals will be employed under section 363 of the Bankruptcy Code, rather than as professionals under section 327 of the Bankruptcy Code.  Accordingly, RAS and the RAS Professionals will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

15.    However, to maintain transparency and to comply with the United States Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (*i.e.*, the Jay Alix Protocol), RAS will file with the Court and serve on the Debtors, the Office of the United States Trustee for the Eastern District of New York (the "<u>U.S. Trustee</u>") and any statutory committee appointed in the Chapter 11 Cases (collectively, the "<u>Notice Parties</u>") a report on staffing (the "<u>Staffing</u>

Report") by the 30th of each month for the previous month, which report would include the names and functions filled by all RAS Professionals assigned to this engagement. Such notice will provide a time period for objections to such Staffing Report. All compensation and staffing will be subject to review by the Court in the event an objection is filed to a Staffing Report.

16.    In addition, RAS will file with the Court and serve on the Notice Parties reports of compensation earned and expenses incurred on a quarterly basis (the "Compensation Reports"), which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports will summarize the services provided, identify the compensation earned by each RAS Professional, itemize expenses incurred and provide for an objection period of twenty-one (21) days from the filing and service of the Compensation Report. All such compensation would be subject to review by this Court if an objection is filed.

## PAYMENTS PRIOR TO THE PETITION DATE

17.    Prior to the Petition Date, RAS received a retainer in the total amount of $250,000 (the "Retainer"). All of RAS' prepetition invoices totaling $352,474 have been paid in full and, pursuant to the Engagement Letter, RAS will continue to hold the Retainer through the end of its engagement and apply the Retainer to its final invoice. Any remaining balance in the Retainer will be returned to the Debtors.

18.    Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and RAS or the RAS Professionals for compensation to be paid in the Chapter 11 Cases.

19.     RAS is not a creditor of the Debtors' estates, and has been fully paid by the Debtors for all prepetition services rendered by RAS to the Debtors.

## DISINTERESTEDNESS

20.     In connection with its proposed retention by the Debtors in the Chapter 11 Cases, RAS undertook a review of its records to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.    Specifically, RAS reviewed its connections with certain individuals and entities that may be parties-in-interest in the Chapter 11 Cases that were reasonably made known to RAS by the Debtors.    Such parties are listed on **Schedule 1** attached hereto (such parties, the "Potential Parties-in-Interest").    If additional parties-in-interest are reasonably made known to RAS, it will review its connection with such parties and supplement this declaration if additional information requiring disclosure is discovered.

21.     The results of RAS' inquiry into the Potential Parties-in-Interest (or any of their known or apparent affiliates) are listed on **Schedule 2** annexed hereto.    The parties listed on **Schedule 2** include current and former clients as well as professionals with which RAS has worked in the past.    To the best of my knowledge and belief, any representations by RAS of an entity listed on **Schedule 2** (or its known or apparent affiliates) was or is only on matters that are unrelated to the Debtors and the Chapter 11 Cases.    To the extent that RAS discovers or enters into any new, material relationship with Potential Parties-in-Interest, it will supplement this declaration.    To the best of my knowledge and belief, RAS has not represented any Potential Parties-in-Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are

creditors of, or have other relationships to, the Debtors in matters relating to the Chapter 11 Cases.

22.     As part of its diverse practice, RAS appears in numerous cases, proceedings and transactions that involve may different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Chapter 11 Cases.   Also, RAS has performed in the past, and my perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, RAS has in the past, and my currently and will likely in the future be working with or against other professionals involved in Chapter 11 Cases in matters unrelated to the Debtors and the Chapter 11 Cases.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which RAS is to be employed, and none are in connection with the Chapter 11 Cases.

23.     It is RAS' policy and intent to update and expand its ongoing relationship search for additional parties-in-interest in an expedient manner.   If any new material relevant facts or relationships are discovered or arise, RAS will promptly file a supplemental declaration.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

38.     I will direct the day-to-day efforts of the Debtors' management and its employees, the Additional RAS Personnel, and the Debtors' other retained professionals so as to avoid any duplication of services.  The Services to be provided by RAS will complement and will not be duplicative of any services of the Debtors' other professionals,

including any services provided by the Debtors' proposed investment banker, SSG Advisors, LLC.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  February 12, 2019                    By: /s/ Timothy D. Boates

                                                         Timothy D. Boates
                                                         President
                                                         RAS Management Advisors, LLC

## Schedule 1

**(Conflict Search – Potential Parties-in-Interest)**

## List of Potential Parties in Interest

### Debtors

Décor Holdings, Inc.
Décor Intermediate Holdings LLC
The Robert Allen Duralee Group, Inc.
The Robert Allen Duralee Group, LLC
The Robert Allen Duralee Group Furniture, LLC

### Other Names of Debtors

Duralee Fabrics
Highland Court
Suburban Fabrics
Clarke & Clarke
The Robert Allen Group
The RAD Group
The Robert Allen Duralee Group
Duralee Furniture

### Non-Debtor Affiliates

Techstyle Contract Fabrics, LLC
Gaetano Fabrics, LLC
B. Berger Company, LLC
Robert Allen Fabrics (Canada) Ltd.
Robert Allen Europe Ltd.
Ramm, Son & Crocker
Suburban Home Fabrics (Shanghai) Trading Co., Ltd.
Altamont Capital Partners
Leonard Silberman Estate
ACP Décor Holdings LLC

### Counterparties to License Agreements

Multiply Media LLC
Thomas Paul LLC
Lonni Paul Design LLC
John Loecke, Inc.  (d/b/a Madcap Cottage)
John Robshaw, Inc.
Brian Patrick Flynn
Flynnside Out Productions
Tobi Fairley Interior Design
Tilton Fenwick
Camille Shaheen-Tunberg
LKD Acquisition
Jalenekanani, Inc.

Gorrivan Fine Arts, Ltd.
Eileen Kathryn Boyd Interiors, Inc.
Lulu DK LLC

### Current and Former Directors and Officers

Timothy Boates
Lee Silberman
Bill Fuchs
Steve Brownlie
Kevin Mason
Katherine Rice
Kerry Galloway
Marty Rosenberger
Bill Hargreaves
Randall Eason
Brian Sharp
Thomas Fish

### Professionals

Hahn & Hessen LLP
RAS Management Advisors, LLC
Omni Management Group
SSG Capital Advisors, LLC
Halperin Battaglia Benzija, LLP
Otterbourg P.C. (secured lender counsel)

### Banking Institutions

Wells Fargo Bank, N.A.
Citibank, N.A.
TD Canada Trust
Fidelity Investments, Inc.

### Secured Lenders and Agents

Wells Fargo Bank, N.A.
PNC Bank, N.A.
Corber Corp.
Ronald H. Cordover
Jeffrey A. Cordover
Valerie J. Cordover Katz
Cisco Systems Capital Corporation
CIT Bank, N.A.
Key Equipment Finance
Susquehanna Commercial Finance, Inc.

**Insurance Providers & Brokers**

Travelers Corp.
Chubb
Affiliated FM Insurance Co.
Liberty Mutual Insurance Co.
Cigna
Transamerica Premier Life Insurance Co.
Krauter & Company LLC
Brown & Brown Insurance
Employee Benefits Corporation
First Insurance Funding, Inc.
The Magnes Group, Inc.

**Judges in the United States Bankruptcy
Court for the Eastern District of New York**

Craig, Carla E.
Grossman, Robert E.
Lord, Nancy Hershey
Scarcella, Louis A.
Stong, Elizabeth S.
Trust, Alan S.

**Office of the United States Trustee –
(Region 2) New York**

Harrington, William K.
Black, Christine H.

**Major Vendors**

Ceridian HCM, Inc.
Litle & Co.
First Merchant Data Services, LLC
All Covered IT Services
IBM
Konica Minolta
Carr Business Systems
Dialogtech
Iron Mountain

**Landlords**

Boston Design Center
34 South 11th St LP
National Real Estate Advisors, LLC
BSD 80 Broad LLC
80 Broad Street Development, LLC
D&D Building Company, LLC

Cohen Brothers Realty Corporation
Decorative Center of Houston LP
Design Center of the Americas, LLC
Dezer Properties 146 LLC
Dunhill Partners, Inc.
Franklin Court, Inc.
Lincoln Property Company
Jamestown 1 Design Place, L.P.
Market Square AC IV, LLC
RXR 220 Crossways Park West Owner LLC
RXR Realty LLC
San Francisco Design Center Investors, LLC
RREEF Management Company
STAG Industrial Holdings, LLC
Stag Industrial Management, LLC
Tritec Asset Management, Inc.
Morganton Realty Corp.
Canal Center Properties LLC
Michigan Design Center, LP
Michael Drive Partners LLC
Pacific Design Center 1 LLC
Merchandise Mart LLC
Quincy Foxboro, LLC
Morris & Morse Co., Inc.
South Florida Design Park
ADAC, L.P.

**Top 30 Unsecured Creditors**

Valdese Weavers LLC
Sumec Textile Company Ltd.
Triplex Shanghai Enterprises
EDPA USA, Inc.
P. Kaufmann, Inc.
Fleuron Enterprises
United Parcel Service
V.I.P. Incorporated
LA Mills
MTL Global Ventures LLC IPM US
World Linen & Textile Co., Inc.
Swavelle Mill/Creek Fabrics, Inc.
American Express Co.
Wearbest Sil-Tex Mills, Ltd.
Classical Elements, LLC
Parthenon Prints, Inc.
Swan Dyeing and Printing Corp.
Samplex, S.A. De C.V.
Sunbury Textile Mills, Inc.
Shangai Chenglong Textile Arts Co. Ltd.
Kets Tekstil Turizm TIC A.S.
Covington Fabric & Design, LLC

Parry Murray & Co. Ltd.
Richloom Fabrics Group, Inc.
Agolab Studio SRL
Source Asia Trading Company
Heritage Fabrics, LLC
Nassimi, LLC
Applied Textiles, Inc.
Createx, Inc.

Century Link
Spectrum (TWC)
GTT
City of Morganton, NC

### Parties to Threatened & Pending Lawsuits

Source Asia Trading (Shanghai) Co., Ltd, a
Wholly Owned Subsidiary of Creative
Solutions International, Inc.
Bank of America, N.A.
McGreen, Linda
Peterson/Puritan Inc. Superfund Site
Milberg Factors, Inc.

### Utility Providers

Consumers Energy
Granite Telecommunications
North State Communications
Verizon
Verizon Fios
Republic Service
AT&T Mobility
AT&T
Board of Public Works, Gaffney, SC
Georgia Power
Stanley Convergent
Dialog Tech, Inc.
Consolidated Edison
Piedmont Natural Gas
Hudson Energy
Atmos Energy
Florida Power & Light
PSEG Long Island
DTE Energy
National Grid
Optimum
Flowroute
Airespring
ACC Business
XO Communications
Comcast
Crown Castle (Lightower)
Cablevision LightPath
WOW Business

## Schedule 2

### (Connections with Potential Parties-in-Interest)

RAS Management Advisors, LLC has (a) worked on wholly unrelated matters in the past, (b) may currently work on wholly unrelated matters, and (c) may work on wholly unrelated matters in the future, with or on behalf of the following parties:

SSG Capital Advisors, LLC

Otterbourg P.C.

Wells Fargo Bank, N.A.

PNC Bank, N.A.

Bank of America, N.A.

**Exhibit C**

**(Proposed Retention Order)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X
                                                      :
In re:                                                :      Chapter 11
                                                      :
Décor Holdings, Inc., *et al.*,[1]                    :      Case No. 19-71020 (REG)
                                                      :      Case No. 19-71022 (REG)
                        Debtors.                      :      Case No. 19-71023 (REG)
                                                      :      Case No. 19-71024 (REG)
                                                      :      Case No. 19-71025 (REG)
                                                      :
                                                      :      Joint Administration Requested
-------------------------------------------------------------------- X

### ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN RAS MANAGEMENT ADVISORS, LLC TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTING OFFICER AND CERTAIN ADDITIONAL PERSONNEL *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "Application")[2] of Décor Holdings, Inc.

and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order,

pursuant to sections 105(a) and 363(b) of the Bankruptcy Code:  (a) authorizing the Debtors

to retain RAS Management Advisors, LLC ("RAS"), pursuant to the terms and conditions

of that certain letter agreement between RAS and the Debtors dated December 17, 2018 (the

"Engagement Date") and as modified and amended on January 14, 2019 (collectively, the

"Engagement Letter"), to provide (i) Timothy D. Boates as Chief Restructuring Officer

("CRO"), and (ii) additional RAS personnel (the "Additional RAS Personnel" and, together

with the CRO, the "RAS Professionals"); (b) providing that the employment of the RAS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); The Robert Allen Duralee Group, Inc. (8435); The Robert Allen Duralee Group, LLC (1798); and The Robert Allen Duralee Group Furniture, LLC (2835).  The corporate headquarters and the mailing address for the Debtors listed above is 49 Wireless Boulevard, Suite 150, Hauppauge, NY 11788.  The Debtors also maintain a separate corporate office at 2 Hampshire Street, Suite 300, Foxboro, MA 02035.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to those terms in the Application.

Professionals is effective *nunc pro tunc* as of the commencement of these cases (the "<u>Petition Date</u>"); and (c) granting certain related relief; and the Court having reviewed the Application and the Boates Declaration in support of the Application; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application being sufficient under the circumstances and that no further notice need be given; and after due deliberation the Court having determined that the legal and factual bases set forth in the Application and at the hearing thereon establish just cause for the relief granted herein; and good and sufficient cause appearing therefor;

## IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED to the extent set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to employ RAS and the RAS Professionals to provide the Services in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein and in the Application, effective *nunc pro tunc* as of the Petition Date.

3.      Notwithstanding anything in the Application or the Engagement Letter to the contrary:

> (a)    The RAS Professionals, RAS and their affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the Chapter 11 Cases.

> (b)    In the event the Debtors seek to have the RAS Professionals assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new executive officers, or (iii) altering or expanding the scope

of the engagement, the Debtors shall file a motion or application to modify the retention with the Court.

(c)    RAS shall file with the Court, and serve on the Notice Parties, a Staffing Report by the 30th of each month for the previous month, which shall include the names and functions filled by all RAS Professionals assigned to the engagement. The Staffing Report (and RAS' staffing for this matter) shall remain subject to review by the Court in the event so requested by any of the Notice Parties.

(d)    RAS shall file with this Court, and serve upon the Notice Parties, Compensation Reports on a quarterly basis, which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports shall summarize the service provided, identify the compensation earned by each RAS Professional, itemize expenses incurred and provide for an objection period of twenty-one (21) days from the filing and service of the Compensation Report. All such compensation would be subject to review by this Court if an objection is filed.

(e)    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the local bankruptcy rules of this Court, any other orders of this Court, or any guidelines regarding submission and approvals of fee applications, RAS and the RAS Professionals shall be excused from keeping time summaries for services rendered in one-tenth (0.10) of an hour increments and instead RAS is hereby authorized to record its time summaries in one-half (0.50) of an hour increments for purposes of Staffing Reports and Compensation Reports.

(f)    During the course of the Chapter 11 Cases, RAS will only seek reimbursement of actual and necessary expenses itemized in the monthly Staffing Report.

(g)    No principal, employee or independent contractor of RAS or its affiliates shall serve as a director of any of the Debtors during the pendency of the above-captioned cases.

(h)    Without prejudice to parties' rights pursuant to Paragraphs 3(c) and 3(d) hereof, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by RAS for fees and expenses incurred in connection with RAS' retention.

(i)    For a period of three (3) years after the conclusion of RAS' engagement, neither RAS nor any of its affiliates shall make any investments in the Debtors or any reorganized Debtors.

(j)     RAS shall disclose any and all facts that may have a bearing on whether RAS, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

(k)     The Debtors are authorized to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policies.

(l)     There shall be no indemnification of RAS or its affiliates.

4.      With respect to controversies or claims arising out of or in any way related to the services in the Engagement Letter, notwithstanding any arbitration, dispute resolution or exclusive jurisdiction provisions contained in the Engagement Letter, any disputes arising under the Engagement Letter shall be heard in this Court during the pendency of these cases.

5.      To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

6.      Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted by this Order.

8.      This Court shall retain jurisdiction to hear and determine all matter arising from or relating to the implementation or interpretation of this Order.